# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ICARUS HARMON, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| RAPIDCOURT, LLC, | : | No. 17-5688 |
|     Defendant. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                             **November 20, 2018**

      Icarus Harmon alleges that RapidCourt, LLC violated the Fair Credit Reporting Act ("FCRA") and Fair and Accurate Credit Transaction Act ("FACTA") when it provided his criminal record to a consumer reporting agency, Checkr, Inc., that ultimately sold a consumer report regarding Harmon to his prospective employer. Although Harmon alleges that his criminal record could not lawfully be included in a consumer report pursuant to the FCRA, he does not claim that this information was actually included in the report that Checkr provided to his prospective employer. Without such an allegation, RapidCourt contends that Harmon lacks standing to sue under the FRCA and, accordingly, moves to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. RapidCourt also argues that Harmon fails to state a claim under the FACTA. The Court agrees and, therefore, grants the Motion to Dismiss.

## I.    BACKGROUND

### A. Factual Allegations

      Harmon claims that he has been haunted by the inclusion of stale criminal charges in a consumer report in violation of the FCRA and FACTA. When Harmon applied for a job with Uber, Uber contracted with Checkr, a consumer reporting agency, for a consumer report on Harmon as part of the employment screening process. (Am. Compl. ¶ 8.) Checkr, in turn, contracted with

RapidCourt for Harmon's criminal history. (*Id.* ¶ 9.) Harmon alleges that RapidCourt is a "consumer reporting agency" and that the information transmitted from RapidCourt to Checkr was a "consumer report," as both terms are defined in 15 U.S.C. § 1861a(f) and (d), respectively. (*Id.* ¶¶ 4, 12.) The criminal background information RapidCourt provided to Checkr included criminal charges older than seven years that did not result in any convictions. (*Id.* ¶¶ 16–18.) Harmon alleges that RapidCourt willfully included this criminal background information in its report to Checkr, even though such information cannot be included in a consumer report under the FCRA, 15 U.S.C. § 1681c. (*Id.* ¶¶ 19–23.) By sharing this information with Checkr, RapidCourt also "failed to maintain accuracy in [Harmon's] consumer report," which Harmon states violated another FCRA provision, 15 U.S.C. § 1681e. (*Id.* ¶¶ 45–47.)

Because RapidCourt included this criminal information in its report to Checkr and failed to maintain an accurate consumer report, Harmon states that he suffered several distinct harms. Specifically, Harmon allegedly suffered from: "(a) embarrassment; (b) frustration; (c) fear of future reports to other future employers containing the same information; and (d) substantial administrative steps taken by Plaintiff to clear his Checkter, Inc. file." (*Id.* ¶¶ 25, 50.) However, Harmon acknowledges that "the information contained in the disclosure did not prevent [him] from obtaining employment with Uber." (*Id.* ¶ 25.)

### B. Procedural History

Harmon sued RapidCourt in December 2017 for three violations of the FCRA and FACTA: (1) inclusion of prohibited criminal information in Harmon's consumer report; (2) failure to maintain reasonable procedures for accuracy in a consumer report; and (3) failure to provide Harmon with a copy of his consumer file. (*Id.* ¶¶ 22, 47, 63.) RapidCourt moved to dismiss Counts I and II of the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure in May

2018. The Court denied the motion but noted that the Complaint was "unclear and lack[ed] detail" and ordered Harmon to file an amended complaint detailing "the nature and effect of Defendant's alleged FCRA violations." (Order Denying Def.'s Mot. to Dismiss, July 2, 2018.)

Harmon filed an Amended Complaint with nearly identical factual allegations to those in his original pleadings. However, the Amended Complaint clarifies two issues: (1) the injuries Harmon claims he suffered as a result of RapidCourt's conduct and (2) the relationship among RapidCourt, Checkr, and Harmon's prospective employer, Uber.

First, the Amended Complaint explicitly states that Uber did not deny Harmon employment based on the adverse and allegedly impermissible information that RapidCourt provided to Checkr. (Am. Compl. ¶ 25.) Instead, Harmon describes four other injuries, discussed above, that he suffered as a result of the disclosure. (*Id.* ¶¶ 25, 50.)

Second, the Amended Complaint claims that Harmon's alleged injuries stemmed not from RapidCourt's disclosure of any adverse information to Uber but to the consumer reporting agency, Checkr, which had contracted with RapidCourt for Harmon's criminal background information. Indeed, Harmon attached a notice from Checkr as an exhibit to his Amended Complaint. (*Id.* at Ex. 1.) The notice states that Checkr "utilized the services of a third party fulfillment service (i.e. vendor)" to prepare his consumer report and then indicates that RapidCourt was the vendor responsible for providing "County Criminal Records" to Checkr. (*Id.*) The notice specifically states that "[r]esults received by vendors may not have been included in the final consumer report prepared by Checkr" in part because "federal and state consumer reporting laws restrict what may be reported by consumer reporting agencies." (*Id.*) The notice concludes that "[b]ecause the below vendor [RapidCourt] is not designated as a consumer reporting agency, they may not retain the below information in their system." (*Id.*)

3

In August 2018, RapidCourt moved to dismiss the FCRA claims in Counts I and II of the Amended Complaint as well as all FACTA claims pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. In its Motion to Dismiss, RapidCourt attached two exhibits, which it argues the Court may consider because they are "incorporated by reference" into the Amended Complaint. (Def.'s Mem. of Law in Supp. of Mot. to Dismiss [Def.'s Br.], at 4.) Exhibit 1 is a redacted copy of the consumer report Harmon claims Checkr prepared and sold to Uber, which states "clear" for each category of adverse information, including "County Criminal Searches." (*Id.*) Exhibit 2 is "a copy of correspondence from Plaintiff's Checkr consumer report file referenced in the Amended Complaint, in which [consumer reporting agency] Checkr confirms to Plaintiff 'no information, derogatory or otherwise, is [] reported' on Plaintiff's consumer report." (*Id.*) Plaintiff has not contested the authenticity of these documents or argued that they should not be considered by the Court.

## II. STANDARDS OF REVIEW

Motions to dismiss for lack of Article III standing are "properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Constitutional Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). While a factual attack of standing concerns "the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites," a facial attack, at issue here, asserts that a complaint "on its face . . . is insufficient to invoke the subject matter jurisdiction of the courts." *See id.* at 358. In reviewing a facial challenge, courts must "accept the Plaintiffs' well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the Plaintiffs' favor." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). However, courts "disregard legal conclusions." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010).

To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In assessing motions to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). However, courts may also consider "any matters incorporated by reference or integral to the claim." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

### III. DISCUSSION

RapidCourt moves to dismiss Harmon's claims on two grounds. First, RapidCourt argues that Harmon has failed to establish standing to pursue two of his claims under the FCRA—inclusion of prohibited criminal information in Harmon's consumer report and failure to maintain reasonable procedures for accuracy in a consumer report—because he has met neither the injury-in-fact nor causality prongs of standing. (Def.'s Br. at 9–14.) Accordingly, these two claims must be dismissed for lack of subject matter jurisdiction. Second, RapidCourt argues that Harmon has failed to allege any violations or injuries related to the FACTA, other than references to the FACTA in the captions of each count in the Amended Complaint, and therefore has failed to meet the pleading standards sufficient to state a claim for which relief may be granted. (Def.'s Br. at 2.)

**A. Harmon does not have standing to pursue his FCRA claims.**

    *i. Legal Principles Governing Standing*

A plaintiff has the burden to prove standing under Article III of the Constitution. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Standing has three core elements: (1) "an injury in

5

fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) "a causal connection between the injury and the conduct complained of;" and (3) some likelihood "that the injury will be redressed by a favorable decision." *Id.* at 561–62.

When assessing whether a plaintiff has alleged an injury in fact, courts must make determinations as to both the concreteness and particularity of the alleged injury. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). A claim is particularized when "it . . . affect[s] the plaintiff in a personal and individual way." *Id.* For a claim to be concrete, the "injury . . . must actually exist." *Id.* It must be "real, and not abstract." *Id.* However, concrete claims may include intangible injuries. *Id.* at 1549. "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* Yet the Supreme Court has cautioned that the alleged violation of a statutory right does not automatically satisfy the injury-in-fact requirement. *Id.* Thus, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

### ii. The FCRA

The FCRA was enacted "in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The statute requires that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." 15 U.S.C. § 1681(b).

To accomplish this, the FCRA regulates the contents of "consumer reports" and imposes other requirements on "consumer reporting agencies," terms defined in § 1681a(d) and (f) respectively. Generally, consumer reports may not contain records of arrest that predate the report by more than seven years or "[a]ny other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years." § 1681c(a)(2), (5). However, there are exceptions to these content regulations. § 1681c(b). For example, adverse information, including records of arrest predating the report by seven years, may be included when the consumer report is being used in connection with employment at an annual salary of $75,000 or more. § 1681c(b)(3).

The FCRA also requires consumer reporting agencies to "maintain reasonable procedures designed to avoid violations of section 1681c of this title" and to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(a), (b).

For willful noncompliance with the FCRA, as alleged here, a plaintiff may recover actual damages or statutory damages, punitive damages, and attorneys' fees and costs. 15 U.S.C. § 1681n. The FCRA permits "recovery for humiliation and embarrassment or mental distress even if the plaintiff has suffered no out-of-pocket losses." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 719 (3d Cir. 2010). However, several circuit courts have noted that a consumer's awareness that a credit reporting agency has erroneous information about her without any disclosure of such information does not entitle her to damages under the FCRA, even if that knowledge creates mental pain and suffering. *See Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473–75 (2d Cir. 1995) ("[W]e do not believe a plaintiff can recover for pain and suffering when he has failed to show that any creditor or other person ever learned of the derogatory information from a credit reporting

7

agency."); *Hyde v. Hibernia Nat'l Bank in Jefferson Parish*, 861 F.2d 446, 449 (5th Cir. 1988) ("A consumer may learn that a credit agency possesses erroneous information in its files, but he has no cause of action in tort against the credit agency until the agency somehow injures him. The statute does not allow suit against the credit agency for creating, possessing, or revealing to a consumer credit files containing erroneous information, but establishes a cause of action to redress specific injuries sustained by the consumer.")

### iii. Harmon has not alleged a concrete injury

RapidCourt asserts that Harmon's allegations fail to establish a concrete injury sufficient to confer standing to proceed with Counts I and II, because the disclosure of information to another consumer reporting agency, without more, does not constitute a concrete harm. Harmon does not contend that he was denied employment as a result of the alleged FCRA violations. Nor does he "allege that any individual or entity connected with his potential employment saw the allegedly prohibited adverse criminal information." (Def.'s Br. at 9–10.) Rather, the only disclosure that RapidCourt made was to a consumer reporting agency, Checkr. In its motion, RapidCourt has attached two exhibits to support this: (1) the consumer report that Checkr has on file, which states "clear" next to all categories of adverse information, including all criminal searches, and (2) correspondence between Checkr and Harmon indicating that Checkr's consumer report on Harmon "has no information, derogatory or otherwise, that is being reported." (*Id.* at Ex. 1, 2.)[1]

---

[1] The Court may consider these exhibits because they are "matters incorporated by reference or integral to the claim." *Buck*, 452 F.3d at 260. Harmon's claims center on the information provided by RapidCourt to Checkr as part of the creation of a consumer report for Harmon's prospective employer, Uber. Thus, that consumer report is both "incorporated by reference" and "integral" to Harmon's claim. Harmon has also asserted that part of his injury was the "substantial administrative steps taken by [him] to clear his Checkter Inc. file." (Am. Compl. ¶¶ 25, 50.) Harmon's correspondence with Checkr regarding the removal of information from his Checkr consumer report is, therefore, "incorporated by reference." Harmon has not contested the authenticity of either exhibit or argued that the Court should ignore these exhibits.

Harmon argues in response that RapidCourt's disclosure to Checkr harmed him in four ways: "(a) embarrassment; (b) frustration; (c) fear of future reports to other prospective employers containing the same information; (d) expenditure of resources to take administrative steps to clear [his] file." (Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss [Pl.'s Br.] at 3–4.) However, Harmon does not dispute in his opposition to Defendant's motion that the information RapidCourt provided to Checkr was never disclosed to Uber or to any other entity aside from the consumer reporting agency, Checkr.

The Court will not wax poetic on the principles of standing applicable here. Rather, it is enough to state that Harmon has not carried his burden in establishing that he suffered an injury in fact. Assuming that RapidCourt is a consumer reporting agency regulated by the FCRA,[2] the Court is unwilling to find that the transmission of allegedly prohibited information from one consumer reporting agency to another is a concrete injury that is "real and not abstract." *Spokeo*, 136 S. Ct. at 1548. Here, Harmon has not alleged that the information that RapidCourt provided to Checkr was disclosed to any other individuals or entities, let alone any that were connected to his prospective employer. Nor has Harmon alleged that this information was false or otherwise inaccurate. The sole contention is that information that sometimes cannot be included in consumer reports was disclosed to a consumer reporting agency, causing him emotional harm and prompting him to take administrative steps to clear his file.

---

[2] RapidCourt denies that it is a consumer reporting agency. (Def.'s Br. at 4, n.4.) The Exhibit attached to the Amended Complaint suggests that RapidCourt is simply a vendor of information for the consumer reporting agency, Checkr. (Am. Compl. at Ex. 1.) Given the breadth of the definition of "consumer reporting agency" in the FCRA, however, the Court will assume, without ultimately deciding, that RapidCourt is a consumer reporting agency. *See Marricone v. Experian Info. Sols., Inc.*, Civ. A. No. 09-1123, 2009 WL 3245417, at *1 (E.D. Pa. Oct. 6, 2009).

9

With his four asserted injuries, Harmon is merely winging it in an attempt to manufacture an injury in fact. Although embarrassment, frustration, and other emotional harms are cognizable under the FCRA, the Court finds that such harms arising solely from disclosure of information *to a consumer reporting agency*, as Harmon has alleged, do not satisfy the Article III injury requirement. This is a logical extension of the principle articulated in *Casella*: a consumer may not recover damages for pain and suffering stemming solely from the consumer's awareness that a consumer reporting agency possesses false or otherwise inaccurate information about him or her. 56 F.3d at 473–75; *see Hyde*, 86 F.2d at 449.

Here, had Checkr simply obtained and possessed the criminal records without contracting with RapidCourt as an intermediary, Harmon would not be able to recover for his embarrassment, frustration, and other emotional harms stemming from his knowledge that Checkr had this information. That is particularly clear in this case: Harmon's alleged FCRA violations concern criminal charges from more than seven years ago that did not result in any convictions. But, depending on the purpose of the consumer report, that very information is *not* to be excluded from consumer reports. 15 U.S.C. § 1681c(b). Thus, it is evident from the structure of the FCRA itself that consumer reporting agencies may obtain such information, even though the statute prohibits its inclusion in some consumer reports issued to third parties. Any embarrassment or frustration that Harmon experienced as a result of Checkr having such information—whether it was obtained directly by Checkr or sent by RapidCourt—cannot constitute a concrete injury. Finding otherwise would neither advance the FCRA's purpose nor comport with well-reasoned case law.

Likewise, Harmon's other asserted injuries are not concrete. First, Harmon's claimed "[f]ear of future reports to other future employers containing the same information" is undercut by the fact that Harmon does not allege that this information reached even his prospective employer

involved in this case. (Am. Compl. ¶¶ 25, 50.) The undisputed consumer report that Checkr provided to Uber and that is incorporated by reference into the Amended Complaint affirms that Uber never saw the allegedly prohibited information: the document shows that Harmon's consumer report is "clear" of any criminal records. (Def.'s Br. at Ex. 1.). Fear of a future harm that has not occurred even in this case is too hypothetical to constitute an injury in fact. *Lujan*, 504 U.S. at 560. Second, Harmon's assertion that he was harmed by the "[s]ubstantial administrative steps taken by Plaintiff to clear his Checkter Inc. file" is belied by the fact that there was no adverse information in his Checkr file. (Am. Compl. ¶¶ 25, 50.) Again, the undisputed exhibits that RapidCourt provided in its Motion to Dismiss and that are incorporated by reference confirm this.

Following *Spokeo*, courts have grappled with the distinction between a concrete injury sufficient to confer standing and a "bare procedural violation." 136 S. Ct. at 1549. Harmon relies on two such cases as support for his standing argument. But both cases are distinguishable from the matter before the Court, because they involve disclosures of information beyond consumer reporting agencies. In *Gambles v. Sterling Infosystems, Inc.*, the court held that the inclusion of erroneous addresses in a consumer report to Gambles' prospective employer was a concrete injury, even though the incorrect information did not affect his employment. 234 F. Supp. 3d 510, 521–24 (S.D.N.Y. 2017). This is where Harmon's case diverges from *Gambles*. Not only did Harmon not lose an employment opportunity with Uber, he has not even alleged that Uber—or any entity other than a consumer reporting agency—ever saw the information that he alleges was in violation of the FCRA or that any of the information that was disclosed by RapidCourt was false.

Harmon also relies on *Hawkins v. S2Verify, LLC*, in which the court denied the defendants' motion to dismiss pursuant to Rule 12(b)(6). Civ. A. No. 15-03502, 2016 WL 107197, at *2 (N.D. Cal. Jan. 1, 2016). While the plaintiff alleged that a consumer report unlawfully included arrest

11

records that did not result in convictions and were older than seven years, as Harmon does, the defendant in *Hawkins* was the consumer reporting agency that actually provided the report to the plaintiff's prospective employer. And importantly, the plaintiff not only alleged that the unlawful information was in the report that the employer received but also that the employer denied the plaintiff employment as a result. Accordingly, the *Hawkins* case sheds no light on whether the disclosure of the same kind of arrest information to *a consumer reporting agency* establishes standing.

Ultimately, the Court agrees with RapidCourt that Harmon has not carried his burden to establish that he suffered an injury in fact and, thus, the sun has set on his FCRA claims in Counts I and II.

### B. Harmon has failed to state any claims under the FACTA.

The Federal Rules of Civil Procedure require that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Harmon has failed to identify any provision of the FACTA that he brings a claim under or to allege any facts supporting claims under the FACTA. Instead, he simply references the FACTA in the heading of each count. This does not meet the pleading requirements of Rule 8. Harmon's FACTA claims in Counts I, II, and III are, therefore, dismissed.

## IV. CONCLUSION

By attempting to expand FCRA liability, Harmon's allegations have flown too close to the sun. Therefore, the motion to dismiss Counts I and II in their entirety and the FACTA claim in Count III is granted. Harmon may proceed on his FCRA claim in Count III. An Order consistent with this Memorandum will be docketed separately.